There was a motion to cite additional authority by the appellant. Any objection from the state? We would object because it seems that this was not a new case that had come up since the brief was filed. It was a previously put out case, so we wouldn't object to it. Well, I think it's boilerplate. I think we'll allow it. We can allow it. We'll allow it. It needs to call the case. Yeah. Your Honor, this case will adopt a 2-17-0766. The people of the state of Oklahoma, Senator Patel, please release Patel, defendant of Appleton. Pardon me, Your Honor. Appellant, Mr. Donald J. Ramsell. Pardon me, Your Honor. Defendant Appleton is married to a woman. Mr. Ramsell. Good morning, Your Honors. My name is Don Ramsell. I'm here on behalf of the defendant appellant. The issue in this case is relatively straightforward. Whether the delay or failure to hold the summary suspension hearing within the 30 days is attributable to the state for their noncompliance with discovery. Did you ever file a motion to compel that discovery? Thank you for asking that question. The most simple answer would be no. But here's the reason why. The summary suspension was set for day 31 of the petition. That was 33 days after the defendant was arrested. So we have this very narrow time frame. And I'll be the first one to say the summary suspension statute and the rules of discovery are not a perfect fit. I've done several cases of personal injury, et cetera, where months and sometimes years go on with ongoing discovery. And no one is prejudiced in between. But we have a suspension that begins on day 46. So the clock is ticking the moment somebody's arrested for a DUI.  Why? Well, first off, I had to wait 28 days under the 214 rule before anything was right. The hearing was set for day 31 from the date of my petition and 214 being requested. That was 72 hours, frankly. And within 72 hours, I couldn't give anybody proper notice of a motion to compel. Well, you can make a phone call or an e-mail. And 201K contemplates that kind of communication between lawyers to enhance communication to make sure that you can be ready. And as you mentioned, not having those materials deprived your client of having his hearing on that day. And, Your Honor, I anticipated a question very similar to what you just asked. I mean, you know that there are simple discovery requests that are made all the time via phone call, via e-mail. Yes. Because you're under time constraints, especially here with your clients coming in from out of state. In the backs of this case, Judge, after waiting 28 days, which I think everyone would agree I have to wait, if I called on day 29, I would have been told that they had already ordered the materials. The problem wasn't my failure to call. The problem was not my failure to have a 201K. The problem was waiting 25 days to order the video when they had three more days to comply, six more days for a hearing. And as the calculation goes, they have offered zero reason for waiting 25 days to make a simple order for a video. It's a checklist. It's electronic. Does their diligence or lack of diligence make a difference here? Absolutely. And how? Had they, you can see from the time frame, they ordered the video on September 8th. I'm not exactly sure how. Let's assume it was the most perfect ordering of a video ever, straight to the record clerk. They had the video by the second hearing date of September 21st. This means at most 13 days from the date of order to the date of receipt of the video. This means that had they ordered the video, had they delayed even two weeks and then ordered the video, it would have been there for the hearing. That's the math. It took them 13 days to obtain the video. So going backwards, since the entire delay was 31 days and they didn't have the video, they had two weeks they could have done this. Should there have been a hearing on the state's diligence? That's another question that I know of. Well, in, I can't pronounce the name, Titsanas. And by the way, there's just a typo. It's actually 140859. In your brief, you put 589. But in that case, we remanded the case. The case was not reversed. It was remanded for the trial court to impose the appropriate sanctions. So shouldn't there be a hearing on diligence when there's this type of failure by the state as opposed to just a blanket statement, I'll judge we didn't get it to them on time? I'm going to say no. Why not? Because in this case, we did have essentially a hearing about the effort the state had gone through. We did have a discussion. You brought that to the attention of the court that morning, did you not? Right. And they told us that their person, I assume it was the secretary of support personnel, ordered it on September 8th. There was a conversation about diligence. They offered no reason for the delay. And frankly, that was the moment in time to do so. It could have been just as easy that the judge, after they said, yeah, we waited until September 8th to order it, that the judge would have said you were not diligent. And it would have been their argument as to their diligence should have preceded the judge's ruling on whose delay it is. They couldn't have waited to see if the judge said you're not diligent, I'm assigning attributing the delay to you. And then they said, now wait a minute, I'm going to offer all my excuses. After the ruling, the time to explain why you have not been able to comply with discovery is during the conversation about who is going to be assigned the delay, what, if any, additional sanctions may apply. So their opportunity to tell us why already passed. They forfeited their ability to offer it. There is no need for a hearing because that's giving them a second bite at the apple. This is not a case where there was no conversation about who was dilatory, who was diligent. And this is something giving them yet another bite. They answered that they were ready to proceed to hearing. Whose burden is it at statutory summary suspension hearing? It's the petitioner's burden, and when that was determined. To show a prima facie case, right? That is correct. And then what happens? Pardon? And then what happens? The burden shifts, does it not, if a prima facie case is shown? Yes, that is true. In this case, Judge, within the facts, and it's at R3, and I apologize, but right in the discussion of why the one we were asking for the videotape of the booking room, and R4, I'm sorry, and the accuracy checks, it is noted that the first time the defendant took a breath test, it was returned mouth alcohol. So this is not mere gamesmanship. Now we wanted to see what happened with that booking video. That, you know, the allegation the officer is supposed to have observed the person for a minimum of 20 minutes so that there is no mouth alcohol, yet something happened. So now that booking room video isn't just ordinarily discoverable, but in fact there is a basis for saying, hmm, did the officer do his job? And we sought the post-breath test accuracy check because maybe there is a problem with the machine's ability to detect or not detect mouth alcohol. That has happened before. So it's not just that we sought it like a laundry list that really didn't matter. This was important to this particular individual case on a specific fact basis. And going back, if I may, to the issue of the diligence, I think it's not beyond this court's capability to say, if you take 25 days to try and comply with discovery that has a 28-day deadline, and you do not offer a reason for the delay, it's presumptively dilatory. Although the record is silent on whether or not it was inadvertent, it was a mistake, somebody missed it, or somebody just was aware of it and left it sit on their desk. We don't know, but your point is it's the state's obligation to show diligence before there's even an inquiry. And I would say the silence constitutes an admission here. Why? Because the state's attorney didn't say, I don't know why it took so long. He even named the person that ordered the material. So if he knew that this was a mistake, an oversight, a piece of paper slipped under a desk, one would think as a lawyer that he would inform the court right then and there, especially when the attorney knows that what's coming down the pipe is a decision on whether or not the delay is going to be attributable to the state or the defendant. To me, that silence in this particular set of facts makes its omission relevant. It would have been offered had it existed. So this is not the case where a state's attorney says, I'm not really sure what happened within the bowels of the office, but I just grabbed the file today, it's not really my file. It's a person that had the specifics before them, including the actual name of the person that ordered it. Does 201K apply to statutory summary suspension hearings? Yes. And if so, how is it applicable? It applies, and like I said, the rules of discovery and summary suspension are not a perfect fit. But in this case, and I did cite a case here that says that in a 201K conference, if the attorneys explain that they had the conference, even though there was maybe not a written statement as such, and there was a conference that morning. The rule does require a written statement in all discovery pleadings. Yes, that would be form over substance because we don't even have a 214 compliance affidavit from the state. I could find numerous technicalities, and you know what, they could pick up the phone and call me and say, you know what, we lost this piece of paper. This is why don't fly in. Don't have Dr. Patel come in. You are correct. However, it goes both ways. I agree with you. You are the petitioner. It's your burden, and you are seeking the discovery. Yes. I know your plan is coming in from out of town. Why not make a phone call or an e-mail? In doing so, you know, looking at this, what the Supreme Court has said, when an attorney attempts to use discovery rules and sanctions as weapons of war of inconvenience instead of truth-seeking purposes for which they were designed, he does a disservice not only to the court and his colleagues at the bar, but also to his clients since the pedophagy makes it more difficult to realistic review of the merits of the client's claim or defense. But this wasn't a weapon over discovery. As I explained, there was a mouth alcohol test and then a subsequent one. But the sanction that you're asking for is a rescission. No, I'm not. I'm asking to attribute the delay using speedy trial. Speedy trial attributions of delay and determinations of delay are not concomitant with the word sanction. The state wants to pervert the issue by using the term sanction. The issue is who delayed the hearing. And in terms of, what was that, pedophagy or something? Pedophagy. Okay. Pedophagy. Here I have a mouth alcohol test result and then a subsequent result. It is under those circumstances that would be the red flag that any knowledgeable attorney in the area of DUI would say something about the testing process may have gone wrong. So this wasn't that. And if there was some burden on me, however slight, to make a phone call and to suggest that I needed to react in 72 hours, but they don't have to react in 25 days to a discovery request, that's turning it upside down. You're holding me to a higher burden than them. I was respectfully, and I'll say this just shortly, we are advocates and adversaries and we represent different parties. I'm not their babysitter for discovery. And they should have known when they looked at the paperwork and said, you know what, there's a hearing three days after this is due and it's going to be day 31, so if I'm not ready, I risk a rescission. This is not algebra. This is math. Your request at the hearing when the case was called for hearing was that there would be a negative inference opposed. I offered two things. Stepping up the ladder of rulings, the first one seems to be in discovery a continuance so the noncompliant party can comply. That's the lightest resolution of a noncompliant discovery. There's no sanction, there's no fine, there's no penalty. But give the man what he wants, which I'm absolutely entitled to. And there's where we have some concessions. It was material, it was relevant. I filed a brief all over the place accusing them of being dilatory and not diligent. And they filed a brief that speaks, that does not counter the fact that I have accused them of being non-diligent. And that is a concession, maybe not binding on the court. Go ahead. I have one other question for you. Yes, sir. The court could have imposed a sanction of not allowing the state to introduce evidence that may have been captured on the video. And may have also entertained a motion to exclude any testing results, correct? Those sanctions could have been imposed. Suppression of evidence would be far more egregious than just getting, I wanted to hear the merits. And I wanted to double check to make sure. My point is there are other sanctions available that you did not request. SHAMBO stands for the proposition that, you know, there are other discovery sanctions available. The court can exclude testimony from the officer regarding what was captured on the video if the video has been destroyed or is not made available, correct? Yes, there is a wide amount. The point is that there are other sanctions available. There are other ways to have your hearing that day. You know, and that's sort of, I think that's the judge looking forward. You know, if I give him the very lightest thing, the other party is going to ultimately win, which is what the delay is. But that shouldn't be the issue before the court. Maybe the lawyer would never have made a motion to rescind based on a lack of timely hearing. Maybe the lawyer, like myself, it's unlikely, but would have gone on the merits regardless, just wanted the videotape. The court was thinking three steps ahead as to what maybe would happen down the road, instead of focusing on the sole issue, which was who is the delay attributable. And that partially makes the court a bit of an advocate, because instead of making the call on that play, they're thinking about what's the score at the end of the game going to be. They didn't rule that particular day on the 14th. Isn't that correct? They put over, they put off ruling with respect to the options you suggested, and said we'll continue this case until the 21st, and gave the state the opportunity to produce the materials by that date. Isn't that correct? Well, the court assigned the delay to the defendant on the first court date. And it wasn't right. By what it did, but not specifically. They didn't articulate that in the record by using those words, did they? Yes, and there was a conversation where the judge said, I know that this delay is going to be continued over the objection of Mr. Ramsell. I could probably find that page, maybe when I step back up, if you don't want me to chew up the time. Right, but by continuing the matter a week, that's how they attributed it to the defense. Right, and they wrote trainer, which is a term. Right, trainer told, trainer told. Right, so the determination of whose delay that was going to be attributed to was made on the 14th. I see, by making that notation. Correct. I needed to complete the process then by formally making the motion rescind when it became intended. I see. Which was the second time. Which did on the 21st. Yes. Okay, thank you. Thank you. Good morning, your honors. Counsel, may it please the court. Mary Fleming, assistant state's attorney on behalf of the people in this case. Your honor. Ms. Fleming, before you get started, tell us how it was that the delay was charged to Mr. Ramsell's client. It seems to go back to the discovery in this case, and this court talked a little bit about that in Chalmers. Like, the defendants are definitely entitled to the Schmidt discovery, and then more than that, they can be entitled to. That's within the discretion of the court, and no one in this case was saying this information was irrelevant. We weren't objecting. We were getting it for the defendant. The defendant wanted it. The court agreed it was reasonable. Everyone was on board with that in this case. Well, what about the point about the lack of any explanation for the delay? Well, your honor, this isn't a case, like I said, where we were objecting. We were trying to get it for the defendant, and the court agreed it was reasonable. The delay, you're talking about the delay in requesting the information from the police. Correct. What municipality was it? It was... It was the village of Winfield, your honor. And the court recognized that in this case, defendant was arrested on the 12th. That's the date of the ticket and the police report that day. But according to the statute, that police report was off to the secretary of state. So defendant was on the ball. He was requesting these documents before the secretary of state had even certified in this case. It hadn't come back to the clerk's office from the secretary of state. Our office didn't have a file open. These are very speedy time limits, and everyone is cognizant of that, and we are trying to comply as best as we can. And the court recognized that the state is asking for documents from another party that maybe haven't been created yet. We were able to get almost everything for the defendant by the first court date. There were only two items missing, which we didn't object to, and we said we will get those for you as soon as possible. Excuse me, the state turned over discovery by the first court date? Yes. Everything but two items, it says in the record. And defendant on that date actually on 9-14. The two items were? The booking video and the accuracy checks. The record on that first date only talks about the accuracy checks, but then on 9-21, it's the booking video, the 9-1-1 dispatch, and all the PBT info. That's page 17. You have to speak up a little bit. Oh, I'm sorry. On 9-4, 9-14, we have the accuracy check records not turned over. That's page 4 of the record. On 9-21, we have booking video, 9-1-1 or dispatch, and all PBT info. Defendant says that's page 17 of the record. And then in the brief, he continues to talk about video and accuracy checks. So it seems that those were the only two items missing at that point. Pointing to, those are pretty important for a summary suspension hearing, aren't they? Of course. And we never disputed relevance. The court understood they were relevant. And this isn't a case where we were objecting or those items were destroyed. We just needed a little more time to get them. But when I look at the statute and the time constraints on a summary suspension statute, why should you get more time? Why shouldn't you have to comply with the time constraints that are set out by statute? How do you get around that? We tried to in this case. And certainly in this case, in Chalmers, this court talked a lot about that and turning those items over and the options that the state has either to answer or to object or to get those items. And we were trying to get them. We thought we would be able to get them. There was no objection. Those items weren't destroyed. We just needed a small continuance, which once you go to the rules of discovery, the judge has discretion to grant a small continuance. Well, but you didn't ask for a continuance. You answered ready on that date. Isn't that correct? You didn't ask for a continuance to comply with discovery so that both sides could have a meaningful hearing. Correct. We were ready to go at that point. But we also acknowledged that defendant was entitled to those items when we were trying to get them. If he wanted his court date, his hearing on the 30th day, that day, he would have to go forward without them, which we recognized was not what he wanted. Why should he have to go forward without them when you're required to turn them over? Which we acknowledged. And we ordered those items. How did you answer ready? Perhaps asking for a continuance would have been a better answer, but that doesn't really make sense either because if defendant wants to go forward, he could decide to go forward without those items or he could wait a very small delay to get those. This wasn't the case where those items were destroyed. We were objecting to them. There was no argument that they were irrelevant. Everyone wanted him to have them and to get a speedy signing. What do you think the intent of that statute is? What is the basis? Why did the legislature put such time constraints on that statute? Because it's a due process right.  Correct. Yep. So why then should the state be able to ignore those time frames, get a continuance, and move on or save the defendant? Oh, well, if you really want to proceed, we can go ahead and proceed, but you're going to proceed without the most rudimentary information that you need to be successful in your hearing. And that wouldn't be ideal for him. And the court recognized that. And they recognized that even defendant in his brief says, this doesn't happen all the time. We request these documents. The state routinely gets them to us. That's the best practice. That's what normally happens. If it doesn't, like in this case, then the judge looks at whether he's going to exercise his discretion or not. And he has discretion to give us a small amount of time, to toll trainer for that short amount of time, for defendant to get the documents that he wanted, which he did by the next court date. They weren't destroyed. We got them to him. He was able to have his hearing. He pled guilty that day. And this hearing occurred well before the summary suspension went into effect, which is the purpose of the short time limits in this case, which the people were trying to comply with. And the court recognized that in this case. I wasn't at an abuse of the judge's discretion in delaying the hearing that was statutorily set and required to go ahead on that 31st day. Well, when you look at the cases where there is an abuse of discretion, and we don't have one in a summary suspension case, so defendant cites two of the closest things, which is the speedy trial cases. And those you're looking at generally a longer amount of time because it's a longer amount of time there. It's 120 days. So, like, we look at battles. We have the state waited 18 days to deliver the evidence to the crime lab, 104 days to ask for that evidence to be tested. We've got Connors where there was a delay of almost two years. We have much more extensive time limits. And even this court in Camp where the tape was completely lost, just missing, was an excessive sanction. What defendant is essentially asking for here is that the state can't go forward on their case. They can't keep it under suspension. Exactly, that part of our case. That's one of the most extreme sanctions for a case where the tape wasn't destroyed, it wasn't lost, the people were trying to comply. We do comply most of the time. And we were able to comply in this case within seven days. How about the fact that Winfield is just a stone's throw from the courthouse and the prosecutor could have taken a break, called the Winfield Police Department and said, we need this item and that item on this case. Hang on, is that the same thing? You know, you talk about 201K. There was a conference. There's investigators in the state's attorney's office. There's staff that can make the short drive to Winfield where we pick up those documents and then get recorded. We could have if we had known it existed. It doesn't sound like from the record at that point that the attorney knew. I don't want to say he didn't know it existed, but he knew he could get it. He just didn't indicate on the record that he thought he could get it that same day. He thought he could get it within seven days. If there had been a motion for sanctions, maybe there would have been more information about why the state wasn't able to get it within the time frame, why we needed more time. But that just didn't happen in this case. It was a little more informal, I would say. And the defendant even today talked about it. The clock is ticking. Correct, correct. And the state has to be cognizant of that in complying with discovery and meeting the timetable of the statute. Correct. So when you say maybe or what might have happened, it's not what might have happened, what could have happened. It's what's on the record that's important. Would you agree? Correct. And the review is the abuse of discretion, whether or not it was abuse of discretion for the trial court to attribute delay to the defendant when there's actually no evidence that the defendant was at fault for not having those materials. Defendant wasn't at fault, but we're in a situation where, in this court, said in Chalmers, the defendant's entitled to those documents. We agree we're going to get them for him. And if we fail to tender the recording or to produce it at the rescission hearing and the defendant moves for sanctions, then the burden shifts to the state to show that its noncompliance with the request was reasonable or the result of extenuating circumstances. But this wasn't a case where we were objecting, we weren't going to comply, we were going to get it to him. And if the defendant had moved for sanctions, we may have had a more complete record about why those documents weren't available. Well, wasn't that the court's job to find out from the state why you're on a deadline and you're right up against the deadline and you didn't produce the records? Why is it defense attorneys' burden to file a motion for sanctions? Doesn't the judge know he's going to be reviewed by this court for an abuse of discretion? Isn't it going to come upon him to ask the parties, what's up? Why don't you have what you're supposed to have pursuant to this statute to the defense? And he did say on the record that he knew that the state was requesting these documents from another entity, sometimes before they were even produced, and he was cognizant of that fact. And he exercised his discretion in tolling Treanor and giving time to get those documents that the defendant wanted for the hearing. Once you move into the rules of discovery, the judge does have discretion, and he was exercising that discretion in this case. And it seems hard to say that no reasonable judge would have made the decision to give the people a small amount of time to toll Treanor and to get those documents. But the state didn't ask for a continuance to get the documents. The state answered it was ready to go to hearings. So the defense was between, as they say, a rock and a hard place, right? I mean, what were they to answer? You're answering ready, even though you knew that they were entitled to the material and you wanted more time to get it, but you answered ready. We wanted more time to get it if defendant wanted it, and defendant did want those documents. That takes us a little out of Treanor. It takes us a little out of Chalmers. We're in a situation where we can get those documents to him. We can't ask for a continuance for him. That doesn't really make sense, that we're going to continue the hearing so that he can have the documents. But the documents he was looking for, the booking video and the accuracy check are integral to his case, aren't they? Absolutely, and we didn't dispute that. So your question is, well, we didn't know whether he wanted them, therefore we answered ready. How could he not want those? That's true, and we didn't object to the relevance of that. But if the state doesn't answer ready, then we're answering we're almost ready, but we've got these documents he wants, which is what we were trying to say, maybe inartfully. But we were ready to proceed, but we understood that the defendant wanted those documents, and we would get them to him in a short amount of time, which we were able to do. So if that's the case, how could the delay be attributed to him? Well, under Treanor, Treanor wasn't really looking at whether there was discovery involved. That was just flat-out time limits. Time limits, and then there are strict time limits unless delay is occasioned by the defendant. In this case, I think I hear you saying delay was not occasioned by the defendant. Isn't that what you've just said? No, Your Honor. The discovery the defendant wanted, which he was entitled to, which was relevant, made the hearing unable to happen on the first court date. And so the judge told Treanor so that the defendant could get those documents, we could get him a timely hearing before his summary suspension went into effect, which we were able to do. The judge was trying to balance. I see that I'm out of time. But what materials were tendered on the first date? You mentioned everything that was requested except for what was actually tendered. The people didn't set out on the record the specifics of what was tendered, which probably would have been a better practice. Then forget my question. Because if it's not on the record, it's not on the record. All right. Thank you, Your Honor. Thank you. The prosecution said they're ready most of the time. Most of the time they do their discovery. So I think that opens the door for me to make this comment. I was at the Illinois State Bar Association in your meeting. I discussed with fellow defense attorneys Is this on the record? Is this on the record? Yeah. Is this on the record in this case? No, it is not. Okay. Then move on. But it is gamesmanship for the state to answer ready, ready without complying with discovery. That is the gamesmanship. And why do you think I'm here on an appeal of a six-month suspension that ended a year ago? Because in 30 years of practice, there's not one appellate case yet to tell the state get your discovery ready. This is frankly a case of first impression. Why? Because the amount of effort to come before the court and finally put one in front of this court that says stop assigning the delay to the defense simply because they request discovery needs to end as a practice. I think the law supports your contention already. I know. And with all due respect, Mr. Ramchow, accusing and accusations really don't benefit. I will move on. Just stick to the points. The failure to show diligence and the contributing delay to your client, your argument, that was an abuse of discretion. That's correct. And I can show you diligence here in the record. As you can see on C44, so the defendant was arrested on August 12th. C44, the Secretary of State had already received the sworn report and confirmed the suspension in five days. And if you're familiar with the practice, it's usually the Secretary of State that takes the longest to do that. It took them five days here. And a checklist to be sent to the police officer? We know how the practice works. Officer, bring the video. Bring the police report. Bring the law. Did anybody suggest on the record, let's pass the case and make a phone call? The State did. They said they were going to have it today. Like I said, in the record. I could ask for it until the cows came home. They weren't bringing it. And that was their position. And they wanted, in gamesmanship, force me to either answer ready, because I had a doctor from California, and I flew in myself, or eat the time, because that was what they knew the judgment did. But be that as it may, this is a case that, regardless for the specifics of this particular case, it's very narrow. The facts are very, very much in favor of the appellant. It's not a fishing expedition because of the mouth alcohol test. Because of the mouth alcohol test. It's not a fishing expedition. We're just looking for things. Your position is you had a viable claim in that petition, although it is a boilerplate petition, but that's every case. Right. But this one had the facts that supported it. You had the nuts and bolts to put it together. Had a discovery plus, if you will. Right. Thank you. Thank you, both parties, for your arguments. A written decision will be issued in due course.